MILBERG LLP
BRAD FRIEDMAN
JENNIFER L. YOUNG
JOSHUA E. KELLER
One Pennsylvania Plaza
New York, New York  10119-1065
Telephone: (212) 594-5300
Facsimile:  (212) 868-1229
E-mail:bfriedman@milberg.com
        jyoung@milberg.com
        jkeller@milberg.com

*Attorneys for Plaintiffs*

**09 CV 7312**



RECEIVED
AUG 19 2009
U.S.D.C. S.D. N.Y.
CASHIERS

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT and HARLENE HOROWITZ, On Behalf of Themselves and All Others Similarly Situated, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>AIG INTERNATIONAL GROUP, INC., AIG INTERNATIONAL INSURANCE COMPANY OF CALIFORNIA, INC., AIU HOLDINGS, INC., CHARTIS INSURANCE )<br><br>Defendants. ) | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Robert and Harlene Horowitz ("Plaintiffs"), by and through their attorneys, on behalf of themselves and all others similarly situated, make the following allegations and claims for relief against defendants AIG International Group, Inc., AIG International Insurance Company of California, Inc., AIU Holdings, Inc., and Chartis Insurance ("Defendants"). Other than those allegations pertaining to Plaintiffs, which are based on personal knowledge, all allegations are made upon information and belief.

## NATURE OF ACTION

1.      This is a class action seeking relief for Defendants' Breach of Contract; Breach of the Implied Covenant of Good Faith and Fair Dealing; and Unjust Enrichment to remedy Defendants' calculated, ad hoc effort to deprive their policyholders of fraud protection coverage, which Defendants solicited them to accept and for which they collected substantial premiums, by re-defining the terms of coverage in order to deny certain claims now that their policyholders lost millions of dollars in the largest Ponzi scheme in history.

2.      This class action seeks: (i) compensation for the damage caused by Defendants' illegal acts and (ii) declaratory and injunctive relief to end the Defendants' improper practices.

3.      Plaintiffs bring this class action on behalf of all AIG policyholders who hold or held an AIG homeowner's insurance policy with coverage for Fraud Safeguard Events (the "policy") and lost money in Bernard L. Madoff's ("Madoff") Ponzi scheme during the time the AIG policy holders held such a policy. Madoff, through his company Bernard L. Madoff Investment Securities ("BMIS"), conducted a Ponzi scheme (the "Madoff fraud") since at least the early 1990s that defrauded thousands of clients who invested with the BMIS investment advisory business.

4.      Defendants contracted to pay Plaintiffs and Class members for the "loss of money, securities, or other property up to the applicable Limits of Insurance shown in the schedule, resulting directly from fraud, embezzlement, or forgery perpetrated against [policyholders] or [policyholders'] family member[s] during the Policy Period." Defendants have failed to comply with this contractual obligation by refusing to pay Plaintiffs and Class members for losses resulting from the Madoff fraud, even though Defendants themselves drafted the entire policy.

5.      Plaintiffs and Class members invested their money with Madoff with the reasonable expectation that Madoff would invest that money using an investment strategy Madoff called his "split-strike conversion strategy." Through this so-called strategy, Madoff promised clients, among other things, that he would invest their funds in a basket of common stocks that would replicate the Standard & Poors 100 index, a collection of the 100 largest publicly-traded companies in terms of their market capitalization. Of course, Madoff did no such thing. Instead, Madoff fraudulently used Plaintiffs' and all other Class members' investments to perpetuate the largest Ponzi scheme in history.

6.      Defendants have improperly refused to pay Plaintiffs and Class members for their losses resulting from the Madoff fraud, even though the Madoff fraud is covered by the policies.

7.      Plaintiffs, on behalf of themselves and all others similarly situated, seek injunctive relief to force Defendants to fulfill their contractual obligations under their own policies, as well as damages, restitution, and costs of suit as appropriate.

## PARTIES

8.      Plaintiff Robert Horowitz is a natural person, and, at all relevant times, has been a resident of Los Angeles County, California. During the Class Period, Mr. Horowitz maintained a

homeowner's insurance policy through Defendants AIU Holdings, Inc. and American International Insurance Company of California, Inc. He has invested monies with BMIS since approximately 1997.

9.      Plaintiff Harlene Horowitz is a natural person, and, at all relevant times, has been a resident of Los Angeles County, California. During the Class Period, Ms. Horowitz maintained a homeowner's insurance policy through Defendants AIU Holdings, Inc. and American International Insurance Company of California, Inc. She has invested monies with BMIS since approximately 1997.

10.     Defendant AIG International Group, Inc. ("AIG"), a Delaware corporation, maintains its principal place of business at 70 Pine Street, New York, NY 10270 and is the parent company of American International Insurance Company of California, Inc., AIU Holdings, Inc. and AIG Private Client Group.

11.     Defendant American International Insurance Company of California, Inc., a California corporation, is a wholly owned subsidiary of AIG that maintains its principal place of business at 70 Pine Street, New York, NY 10270. American International Insurance Company of California, Inc. is an insurance company that writes personal lines of insurance through American International Group, Inc.'s Personal Lines Pool, which consists primarily of private passenger auto, homeowners and other personal lines products and issued Plaintiffs their policy containing Fraud SafeGaurd coverage. Substantially identical policies were issued by American International Insurance Company of California, Inc. and/or other AIG subsidiary companies to all other Class members.

12.     Defendant AIU Holdings, Inc., a Delaware corporation, is a wholly owned subsidiary of AIG that maintains its principal place of business at 70 Pine Street, New York, NY.

Until approximately July 27, 2009, AIG Private Client Group was a division of AIU Holdings, Inc., providing homeowner's insurance protection. AIG Private Client Group sent letters to Plaintiffs and Class members denying claims for losses resulting from the Madoff fraud.

13.    Chartis Insurance has its principal place of business located at 175 Water Street, New York, NY 10038 and was created by AIG on or about July 27, 2009 as a new brand to replace AIU Holdings, Inc., to hold AIG's Commercial Insurance, Foreign General Insurance, and Private Client groups.

## JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction because it is a class action under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), codified in pertinent part at 28 U.S.C. § 1332(d), since the aggregate claims of Plaintiffs and proposed Class members exceed $5,000,000, exclusive of interest and costs and there is diversity of citizenship between at least one member of the proposed Class and Defendants. Furthermore, Plaintiffs allege that more than two-thirds of all members of the proposed Class in the aggregate are citizens of a state other than New York, where this action is originally being filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

15.    Venue is proper in this District under 28 U.S.C. § 1391(a)(1) and (2) because Plaintiffs reside here, because Defendants have hundreds, if not thousands, of policyholders in this District, because Defendants conduct substantial business in this District through the promotion, sale, marketing and distribution of their homeowner's insurance, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## DEFENDANTS' BUSINESS PRACTICES

16.    Defendants insure policyholders for, among other things, homeowner's insurance, which specifically provides for what is known as AIG Fraud SafeGuard coverage.

17.    AIG Fraud SafeGuard coverage insures against losses where loss of money, securities, or other property results "directly from **fraud, embezzlement, or forgery**." (Emphasis in original).   The policy's definition of fraud includes "[a]ny . . . intentional perversion of truth by someone other than you or a family member perpetrated in order to induce you or a family member to part with something of value."

18.    During the Class Period, Plaintiffs and Class members agreed to pay and did pay the premiums for their policy, which contained AIG Fraud SafeGuard coverage.

19.    In December 2008, Madoff stated that his investment advisory business, BMIS, was a fraud and that "it's all just one big lie," and that it was "basically, a giant Ponzi scheme." Madoff stated that he estimated losses from this fraud to be approximately $50 billion.

20.    On December 11, 2008, Madoff was arrested and charged with securities fraud.

21.    On March 12, 2009, Madoff plead guilty to 11 counts of a criminal information that included charges for securities fraud.

22.    As a result of Madoff's fraud, Plaintiffs and Class members lost the final balance reflected in their November 30, 2008 BMIS statement, which was the last BMIS statement they received.  Plaintiffs held and lost money from their account, "Robert Horowitz as Trustee of the Horowitz Family Trust," which had a final balance of over $8,500,000.00.

23.    Nevertheless, when Plaintiffs and Class members submit a claim under their policy seeking payment for losses resulting from the Madoff fraud, Defendants improperly deny all coverage on several grounds, all of which are erroneous.

24.     Specifically, Defendants refuse to pay Plaintiffs and Class members for their losses resulting from the Madoff fraud on the grounds that accountants retained by Defendants determined that certain "investment account(s) exceed the amount of . . . capital contributions. Any alleged gains, growth, or appreciation of . . . capital contributions are the subject of the Madoff fraud scheme are not covered by the policy. Accordingly, [there is] . . . no covered loss." However, the policy has no provision stating that Plaintiffs' and the Class members' losses will be determined and therefore limited by the type of valuation implemented by Defendants' accountants. Nor does the policy contain any other language that could be read to impose the coverage limitation conjured by Defendants.

25.     Plaintiffs' and the Class members' loss is the amount shown on their last account statement, and cannot be erased by Defendants' ad hoc, after-the-fact definition of covered loss. The amount on the last account statement typically constituted most or all of Plaintiffs' and other Class members' life savings, and all Plaintiffs and Class members understood that this amount was theirs and that they could order their lives around this premise. Nothing in the policy modifies this ordinary understanding of loss. Despite Defendants' attempt to re-define coverage *after* a claim-triggering policy event, the focal point of this coverage dispute is and should be Plaintiffs' and Class members' legitimate expectation based on written confirmations and account statements based on real, well-known and public verifiable securities. The total of the amounts listed on the final November 30, 2008 BMIS statements is therefore the covered loss sustained by Plaintiffs and Class members.

26.     Even if Plaintiffs and Class members are not entitled to the amount listed in the final November 30, 2008 BMIS statement, their loss is still far greater than the amount claimed by Defendants because Plaintiffs' and Class members' capital contributions are entitled to an

6

implied interest rate.  Additionally, non-recoverable income tax payments based on Madoff

statements reflect actual out-of-pocket pecuniary losses resulting directly from the Madoff fraud.

27.     Moreover, there is some indication that BMIS did not start as a Ponzi scheme but

gradually evolved into one over a period of time, and for some period of time, BMIS earned all

or at least a portion of the earnings reported to customers.  Thus, there is no basis to disallow

customer gains during this pre-Ponzi period.

28.     Accordingly, Plaintiffs and the Class have sustained a real loss for which they are

entitled to payment from Defendants.

29.     Defendants also provide improper justification for their denial of payment to

Plaintiffs and Class members on the basis of certain policy exclusions, even though Defendants

do not and cannot explain how any of these exclusions apply.

30.     One such exclusion is that the policy will not cover Plaintiffs and Class members

for their losses resulting from the Madoff fraud because Defendants "do not cover any loss

caused by the confiscation, destruction, or seizure of property by any government or public entity

or their authorized representative."

31.     Plaintiffs' and the Class members' loss, however, did not result from the acts of

any government, public entity or authorized representatives.

32.     Defendants also claim that the following exclusions apply based on Defendants'

after-the-fact valuation method:

> loss arising out of a business or professional service engaged in by
> the insured or a family member; any guarantee of the financial
> performance of any financial instrument or investment vehicle;
> indirect loss resulting from any fraud guard event, including, but
> not limited to, an inability to realize income that would have
> realized had there been no loss or damage to money, securities, or
> other property; and investment loss due to corporate fraud (loss
> due to the change in value of securities issued by a business where

7

the loss results from fraud by the business which issued the securities).

33.    None of these exclusions apply because, among other reasons,

    a.    Defendants' valuation, as described above, is improper;

    b.    the loss did not arise out of a business or professional service engaged in by any of the Plaintiffs or Class members;

    c.    the recovery sought is not based on future guarantees of returns, but on money that was already realized;

    d.    Plaintiffs' and Class members' loss was based not on an indirect loss resulting from a fraud guard event, but on an direct of result of such an event;

    e.    the fraud that caused the loss was not due to the corporate fraud of a company that issued securities.  Rather, the fraud that caused the loss was due to the actions of an investment adviser.

34.    Defendants are contractually obligated to pay Plaintiffs and Class members for their loss from the Madoff fraud, despite their baseless attempts to refuse do so.

## CLASS ALLEGATIONS

35.    Plaintiffs bring this class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following class (the "Class"):

> All AIG policyholders in the United States who lost money in connection with Bernard Madoff's Ponzi scheme during the time they held an AIG homeowner's insurance policy with AIG Fraud SafeGuard coverage.

36.    Excluded from the Class are (1) Defendants and any parent, subsidiary, corporate affiliate, officer, director or employee of a Defendant, (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the judge(s) to whom this case is assigned and any immediate family members thereof.

37.     Plaintiffs reserve the right to modify or amend the Class definition(s) before the Court determines whether certification is appropriate.

38.     <u>Numerosity Under Rule 23(a)(1)</u>:  The members of the Class are so numerous that joinder of all Class members is impracticable.  Plaintiffs believe that there are potentially hundreds, if not thousands, of Class members, though the exact number and identities of the Class members are currently unknown to Plaintiffs.

39.     <u>Commonality Under Rule 23(a)(2)</u>:  This action involves common questions of law and fact, including, but not limited to, the following:

      a.     Whether Defendants are permitted, under the terms of their policies with Class members, to deny claims for losses incurred in the Madoff fraud;

      b.     Whether Defendants' refusal to pay Class members' claims under the policy amounts to a breach of contract;

      c.     Whether Defendants are permitted, under the covenant of good faith and fair dealing implied in the insurance agreements, to deny claims by re-defining covered loss under the policy;

      d.     Whether Defendants have been unjustly enriched as a result of the conduct alleged in this Complaint;

      e.     Whether Plaintiffs and the Class are entitled to restitution, damages, declaratory and/or injunctive relief, as a result of Defendants' conduct alleged in this Complaint;

      f.     Whether permanent and/or preliminary injunctive relief is necessary to curb Defendants' conduct.

40.     <u>Typicality Under Rule 23(a)(3)</u>:  Plaintiffs' claims are typical of the claims of the other members of the Class, because all Class members sustained economic loss as a result of Defendants' conduct.

41.     <u>Adequacy of Representation under Rule 23(a)(4)</u>:  Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs have retained competent

9

counsel with extensive experience in class action litigation. Plaintiffs' interests do not conflict but coincide with the interests of the Class.

42.     The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and relief.

43.     For all these reasons, a class action is superior to other available methods for the fair and efficient adjudication of this matter. Moreover, because the economic loss suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class individually to redress the wrongs done to them. The Class is readily definable, and prosecution of this action as a class action will eliminate the possibility of repetitious litigation. There will be no difficulty in the management of this action as a class action.

## FIRST CAUSE OF ACTION
### Breach of Contract

44.     Plaintiffs and the Class re-allege and incorporate by reference all the preceding allegations.

45.     The material terms of Defendants' homeowner's insurance policies with Plaintiffs and the members of the Class included Defendants' promise to cover losses resulting from, among other things, certain fraudulent acts perpetrated by a third party, such as the Madoff fraud.

46.     Plaintiffs and the Class members gave consideration in the form of premiums that was fair and reasonable, and performed all obligations required under their respective insurance contracts with Defendants.

47.     Defendants breached their contractual promise to pay for losses arising from the Madoff fraud, which fits the definition of covered losses under the policy.

10

48.    By reason of Defendants' breaches, Plaintiffs and the Class suffered damages in an amount to be proven at trial.

49.    Defendants directly benefited from, and are unjustly enriched by, the contractual breaches alleged in this Complaint.

## SECOND CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing

50.    Plaintiffs and the Class re-allege and incorporate by reference all the preceding allegations.

51.    Plaintiffs and the Class members each had a written contract with Defendants governing the insurance coverage Defendants would provide.  Each contract contained an implied covenant of good faith and fair dealing, which required the parties to act fairly and in good faith with each other, and to act reasonably to fulfill the intent of the parties to the contract.

52.    Implied in these written contracts was Defendants' obligation to value Plaintiffs' and Class members' loss by applying an ordinary understanding of loss.

53.    By applying an after-the-fact and unreasonable valuation of Plaintiffs' and the Class members' Madoff accounts, Defendants breached the implied covenant of good faith and fair dealing in their respective contracts.

54.    Plaintiffs and the Class have been damaged by Defendants' breach of the implied covenant of good faith and fair dealing because Defendants are applying an unreasonable and improper valuation method to Plaintiffs' and Class members' policies.

## THIRD CAUSE OF ACTION
### Unjust Enrichment

55.    Plaintiffs and the Class re-allege and incorporate by reference all the preceding allegations in this Complaint.

56.     Defendants collected inflated, insurance premiums as consideration for their promise to provide Fraud SafeGuard coverage to Plaintiffs and Class members, which they refused to provide by denying claims once losses were incurred.

57.     Defendants continue to retain, and refuse to return, the premiums Plaintiffs and the Class paid on their insurance policies, with conscious disregard for the rights of Plaintiffs and the Class.

58.     By its misleading, bad faith and unlawful conduct alleged in this Complaint, Defendants unjustly received a benefit at the expense of Plaintiffs and Class members.

59.     It is unjust to allow Defendants to retain the profits from their conduct without providing compensation to Plaintiffs and the Class.

60.     Plaintiffs and the Class are entitled to restitution and disgorgement on all profits, benefits and other compensation obtained by Defendants from its misleading, bad faith, and unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for judgment, as follows:

A.     An Order certifying this case as a class action and appointing Plaintiffs as Class Representative and their counsel as Class counsel;

B.     A judgment awarding Plaintiffs and the Class actual damages in an amount according to proof for Defendants' breaches of the insurance agreements, and for all other Defendants' conduct alleged in this Complaint entitling Plaintiffs and members of the Class to actual damages;

C.     A judgment awarding Plaintiffs and the Class declaratory and/or injunctive relief, as a result of Defendants' improper and unlawful conduct and practices alleged herein;

D.     A declaration that the policy covers losses from the Madoff fraud based on the amounts listed on policyholders' final account statement or, in the alternative, a declaration that the policy covers losses from the Madoff fraud based on alternative methods of calculation set forth herein;

E.     Ordering that restitution be made to Plaintiffs and Class for Defendants' unjust enrichment;

F.     Ordering that an accounting be made by Defendants of its wrongfully obtained payments and profits;

G.     Pre-judgment and post-judgment interest;

H.     Costs of this action, including reasonable attorneys fees and expenses; and

I.     All other relief as this Court may deem necessary, just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury for all issues so triable under the law.

Dated:  August 19, 2009

**MILBERG LLP**


BRAD N. FRIEDMAN
JENNIFER L. YOUNG
JOSHUA E. KELLER
One Pennsylvania Plaza, 49th Floor
New York, NY  10119-0165
Telephone:  (212) 594-5300
Facsimile:   (212) 868-1229
E-mail:      bfriedman@milberg.com
             jyoung@milberg.com
             jkeller@milberg.com

*Attorneys for Plaintiffs*

14