UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT and HARLENE HOROWITZ, On Behalf of Themselves and All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>  -against-<br><br>AMERICAN INTERNATIONAL GROUP, INC., AMERICAN INTERNATIONAL INSURANCE COMPANY OF CALIFORNIA, INC., AIU HOLDINGS, INC. (NOW KNOWN AS CHARTIS INC.), CHARTIS INC., AIG PRIVATE CLIENT GROUP, AIU HOLDINGS LLC (ALSO KNOWN AS CHARTIS INTERNATIONAL, LLC), AIG PROPERTY CASUALTY GROUP, INC., (NOW KNOWN AS CHARTIS INC.), and JOHN DOES 1-49,<br><br>     Defendants. | ECF CASE<br>09 CV 7312 (PAC) (THK) |

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THE MOTION TO DISMISS
THE SECOND AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

I. THE POLICY DOES NOT COVER PLAINTIFFS' PURPORTED "LOSS" ....................2

    A. Plaintiffs Have Not Suffered A "Loss" of "Money, Securities or Other Property" ...................................................................................................................2

    B. Plaintiffs Have Not Suffered A Loss "Directly" From Fraud.................................4

    C. Plaintiffs' Claim Falls Squarely Within The Policy's Exclusions...........................5

    D. Plaintiffs Cannot State A Claim For Non-Recoverable Tax Payments ...................6

    E. Plaintiffs Cannot Escape Their Status As "Net Winners" .......................................8

II. Plaintiffs' other claims are duplicative of their breach of contract claim and thus fail as a matter of law.........................................................................................................9

CONCLUSION..............................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Alexsey v. Kelley*,
    614 N.Y.S.2d 736 (2d Dep't 1994)..........................................................................................7

*Am. Trust & Sav Bank v. U.S. Fid. & Guar. Co.*,
    418 N.W.2d 853 (Iowa 1988) ...................................................................................................7

*Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce*,
    2010 WL 375162 (1st Dep't Feb. 4, 2010).............................................................................10

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)..............................................................................................................9

*Atlas Assur. Co. v. McCombs Corp.*,
    146 Cal. App. 3d 135 (3d Dist. 1983).......................................................................................3

*Bank of N.Y. Trust, N.A. v. Franklin Advisors, Inc.*,
    522 F. Supp. 2d 632 (S.D.N.Y. 2007).......................................................................................3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................................7

*Blaney v. Int'l Ass'n of Machinists & Aerospace Workers*,
    87 P.3d 757 (Wash. 2004) ........................................................................................................7

*Breed v. Ins. Co. of N. Am.*,
    46 N.Y.2d 351 (1978) ...............................................................................................................8

*Cal. Food Serv. Corp., Inc. v. Great Am. Ins.Co.*,
    130 Cal. App. 3d 892 (4th Dist. 1982)......................................................................................9

*Ceramicas Industriales, S.A. v. Metropoloitan Life Ins. Co.*,
    No. 08 Civ. 5114 (DFE), 2009 WL 331262 (S.D.N.Y. Feb. 11, 2009).....................................3

*Citizens Bank & Trust Co. v. St. Paul Mercury Ins. Co.*,
    No. CV-305-167, 2007 WL 4973847 (S.D. Ga. Sept. 14, 2007)...............................................4

*Dean v. Fidelity & Deposit Co. of Md.*,
    253 N.Y.S. 103 (1st Dep't 1931) ..............................................................................................4

*Dream Spa, Inc. v. Fireman's Fund Ins.*,
    No. 06-CV-13142, 2008 WL 355458 (S.D.N.Y. Feb 6, 2008)................................................10

*Fibreboard Corp. v. Hartford Accident & Indem. Co.*,
    16 Cal. App. 4th 492 (1st Dist. 1993).......................................................................................3

*First Nat'l Bank of Dillonvale v. Progressive Cas. Ins. Co.*,
    640 N.E.2d 1147 (Ohio Ct. App. 1993)....................................................................................5

*Fletcher Jones Co. v. United Pac. Ins. Co.*,
  181 Cal. App. 2d 202 (2d Dist. 1960) ................................................................................... 4

*Foy v. D.B. Frame Shop, Ltd.*,
  620 N.Y.S.2d 356 (1st Dept 1994) ........................................................................................ 4

*Fresno Econ. Import Used Cars, Inc. v. U.S. Fid. & Guar. Co.*,
  76 Cal. App. 3d 272 (5th Dist. 1977) .................................................................................... 7

*Ghirardo v. Antonioli*,
  14 Cal. 4th 39 (1996) .......................................................................................................... 10

*Glassalum Int'l Corp. v. Albany Ins. Co.*,
  2005 WL 1214333 No. 03 Civ. 9166(DC),
  2005 WL 1214333 (S.D.N.Y. 2005) ..................................................................................... 3

*Gross v. Empire Healthchoice Assur., Inc.*,
  No. 602848-2005, 2007 WL 2066390 at *4 (N.Y. Sup. Ct. 2007) ..................................... 10

*Hallmark Ins. Co. v. Superior Court of Los Angeles County*,
  201 Cal. App. 3d 1014 ( 2d Dist. 1988) ................................................................................ 3

*Int'l Serv. Ins. Co. v. Gonzales*,
  194 Cal. App. 3d 110 (3d Dist. 1987) ................................................................................... 9

*J.J.J. Props, Inc. v. Trav. Indem. Co.*,
  No. 07 Civ. 0135(WCC), 2008 WL 2735865 (S.D.N.Y. July 7, 2008) .............................. 10

*Jarrett v. Allstate Ins. Co., .*,
  209  Cal. App. 2d 804 ( 1st Dist. 1962) ......................................................................... 3, 4, 7

*Lama Holding Co. v. Smith Barney, Inc.*,
  88 N.Y.2d 413 (1996) ........................................................................................................... 7

*Lambros v. Metro. Life Ins. Co.*,
  111 Cal. App. 4th 43 (2d Dist. 2003) .................................................................................... 4

*Lang v. Hanover*,
  3 N.Y.3d 350 (2004) ........................................................................................................... 10

*Lynch Properties, Inc. v. Potomac Ins. Co. of Ill.*,
  962 F. Supp. 956 (N.D. Tex. 1996) ....................................................................................... 6

*McCarthy v. American Intern. Group, Inc.*,
  283 F.3d 121 (2d Cir. 2002) .................................................................................................. 4

*Melchior v. New Line Prods.*,
  106 Cal. App. 4th 779 (2d Dist. 2003) ................................................................................ 10

*In re New Times Sec. Servs., Inc.*,
  371 F.3d 68 (2d Cir. 2004) .................................................................................................... 5

*OTC Intn'l, Ltd. v. All Those Underwriters at Lloyd's of London*
  *Subscribing to Policy of Ins. Numbered HN99ABXC255*,
  2004 WL 235191 No. 32209/01,
  2004 WL 235191 (N.Y. Sup. Ct. Jan. 29, 2004) ................................................................. 4

*Omni Berkshire Corp. v. Wells Fargo Bank, N.A.*,
  307 F. Supp. 2d 534 (S.D.N.Y. 2004) ............................................................................... 3

*Patrick Schaumburg Autos., Inc. v. Hanover Ins. Co.*,
  452 F. Supp. 2d 857 (N.D. Ill. 2006) ................................................................................. 6

*Producers Dairy Delivery Co. v. Sentry Ins. Co.*,
  718 P.2d 920 (Cal. 1986) ................................................................................................... 3

*Puget Sound Nat'l Bank v. St. Paul Fire & Marine Ins. Co.*,
  645 P.2d 1122 (Wash. Ct. App. 1982) .............................................................................. 5

*Reserve Ins. Co. v. Pisciotta*,
  30 Cal. 3d 800 (1982) ........................................................................................................ 4

*Scarola v. Ins. Co. of N. Am.*,
  31 N.Y.2d 411 (1972) ........................................................................................................ 9

*Securities & Exchange Commission v. Byers*,
  637 F. Supp. 2d 166 (S.D.N.Y. 2009) ............................................................................... 5

*Spitzer v. Schussel*,
  48 A.D.3d 233 (1st Dep't. 2008) ..................................................................................... 10

*St. Paul Fire & Marine Ins. Co. v. Branch Bank & Trust Co.*,
  834 F.2d 416 (4th Cir. 1987) ............................................................................................. 5

*Triton Partners LLC v. Prudential Secur. Inc.*,
  752 N.Y.S.2d 870 (1st Dep't 2003) ................................................................................. 10

*Estate of Ungar v. Orascom Telecom Holding S.A.E.*,
  578 F. Supp. 2d 536 (S.D.N.Y. 2008) ............................................................................... 7

*Union Planters Bank, N.A. v. Cont'l Cas. Co.*,
  478 F.3d 759 (6th Cir. 2007) ............................................................................................. 5

*Visconsi v. Lehman Brothers, Inc.*,
  244 Fed. Appx. 708 (6th Cir. 2007) .................................................................................. 5

*Waller v. Truck Ins. Exch., Inc.*,
  11 Cal. 4th 1 (1995) ........................................................................................................... 4

### **Statutes**

N.Y. Ins. Law § 3401 (2007) ....................................................................................................... 9

**PRELIMINARY STATEMENT**

This is a simple case. There is no dispute that Plaintiffs were "Net Winners"[1] – those who withdrew more from their Madoff account than they invested (here to the tune of a $225,000 profit). Because they in fact realized a net *gain* on their investment, they cannot satisfy the requirements of the Policy of "a *loss* of money, securities or other property . . . resulting directly from fraud" and their claims must be dismissed.

Undeterred, Plaintiffs argue they can recover the "loss" of amounts reflected on their Madoff account statements, claiming these satisfy the Policy requirement of "money, securities or other property" (without directly specifying which). But as Judge Lifland reaffirmed just last week, "[t]he account statements are entirely fictitious, do not reflect actual securities positions that could be liquidated," "are in fact nonexistent," (Net Equity Ruling at 22), and "have no relation to reality." (*Id.* at 29 (citation omitted).) "Although the securities that Madoff allegedly purchased were identifiable in name, the securities positions reflected on customer account statements were artificially constructed. By backdating trades to produce predetermined, favorable returns, Madoff . . . essentially pulled the fictitious amounts from thin air. The resulting securities positions on customers' November 30th Statements were therefore entirely divorced from the uncertainty and risk of actual market trading." (*Id*.) "It would be simply absurd to credit the fraud and legitimize the phantom world created by Madoff when determining Net Equity." (*Id*. at 30.)

The force of Judge Lifland's logic applies equally here. Plaintiffs lost nothing – the

---

[1] This is a term used by Judge Lifland in an opinion issued last week in the Securities Investor Protection Act ("SIPA") liquidation proceedings. *In re Bernard L. Madoff Investment Securities LLC*, SIPA Liquidation No. 08-01789 (BRL) (Mar. 1, 2010) ("Net Equity Ruling") (attached as Exhibit A to the Affirmation of Jane M. Byrne, filed herewith). The court there determined that Net Equity under SIPA is limited to actual customer deposits less any withdrawals, and does not include amounts reflected on customers' account statements.

1

fictitious amounts recorded on their account statements are not money; they are not securities; they are not property.  Because Plaintiffs have not suffered any loss, their claims must be dismissed with prejudice.  Indeed, any other result would be "absurd."

**I.     THE POLICY DOES NOT COVER PLAINTIFFS' PURPORTED "LOSS"**

   **A.     Plaintiffs Have Not Suffered A "Loss" of "Money, Securities or Other Property"**

The Policy insures only against "loss of money, securities, or other property . . . resulting directly from fraud . . . ."  (Ex. A at A-37.)[2]  The terms "money", "securities" and "other property" are explicitly defined by the Policy,[3] and Plaintiffs cannot allege that they suffered a covered loss.  As Plaintiffs admit, they lost no money because they safely "withdrew their principal" before the scheme was uncovered.  (Ex. B ¶ 8; *see also id.* ¶¶ 41-42.)[4]  Nor could Plaintiffs plausibly claim that they are seeking recovery of "Other Property" as defined in the Policy.  That leaves securities.  But it is undisputed that the securities reflected in Plaintiffs' account statements were "pulled from thin air."  "[I]n Madoff's fictional world, no trades were actually executed, customer funds were never exposed to the uncertainties of price fluctuation, and account statements bore no relation to the United States securities markets at any time."  (Net Equity Ruling at 10.)  Plaintiffs therefore owned no "negotiable [or] non-negotiable instruments or contracts representing either money or property" and thus have no insurable loss of securities.[5]

---

   [2]  All references in the form of "Ex. __" refer to the Affirmation of Michael B. Carlinsky filed with the Defendants' moving brief.  Exhibit A is the Homeowner's Policy issued to the Horowitzes.

   [3]  *See* Ex. A at A-36-37 ("Money means … [c]urrency, coins and bank notes in current use and having a face value; and … [t]ravelers checks, register checks and money orders"; "Securities mean negotiable and non-negotiable instruments or contracts representing either money or property"; "Other Property means and is limited to jewelry, precious metals, antiques, fine art, ceramics, furs, collectibles, and gemstones").

   [4]  Exhibit B is the Second Amended Complaint filed January 7, 2010.

   [5]  Plaintiffs' supposed "expectation[s]" of their coverage (Pl. Opp. at 10) do not create coverage where none exists under the Policy's plain and unambiguous language.  *See Hallmark Ins. Co. v. Superior*

2

The lack of a definition of the term "loss" does not save Plaintiffs' claims. "[M]erely because a word or term is not specially defined does not mean we strictly construe it against the insurer." *Fibreboard Corp. v. Hartford Accident & Indem. Co.*, 16 Cal. App. 4th 492, 509(1st Dist. 1993).[6] Thus, unlike the cases cited by Plaintiffs addressing ambiguities in complex transactional documents,[7] the Policy terms here "loss" and "direct loss" require no further definition because they are plain and commonly understood. *Jarrett v. Allstate Ins. Co.*, . 209 Cal. App. 2d 804, 811-812,( 1st Dist. 1962) (defining the word "loss" in its ordinary sense for the purpose of interpreting an insurance policy).[8]

---

*Court of Los Angeles County*, 201 Cal. App. 3d 1014 ( 2d Dist. 1988); *Producers Dairy Delivery Co. v. Sentry Ins. Co*., 718 P.2d 920 (Cal. 1986); *Atlas Assur. Co. v. McCombs Corp.,* 146 Cal. App. 3d 135, 144 (3d Dist. 1983). As Judge Lifland aptly recognized, even if relevant, customers' legitimate expectations "do not apply where they would give rise to an absurd result"—which would certainly be the case here. (Net Equity Ruling at 22.)

[6] Plaintiffs' reliance on Judge Chin's decisions in *Glassalum Int'l Corp. v. Albany Ins. Co*., No. 03 Civ. 9166(DC), 2005 WL 1214333 (S.D.N.Y. 2005) and *Omni Berkshire Corp. v. Wells Fargo Bank, N.A*., 307 F. Supp. 2d 534, 540 (S.D.N.Y. 2004) for the proposition that "the failure to define key policy terms renders a policy ambiguous as a matter of law" (Pl. Opp. at 10) is misplaced. Both cases involved undefined terms with no "definite and precise meaning." *See Glassalum*, 2005 WL 1214333, at *7-8 (holding that the policy's exclusion for "property which is more specifically insured in whole or part by any other insurance" was ambiguous because the terms "more specifically insured" or "other insurance" were undefined); *Omni Berkshire Corp*., 307 F. Supp. 2d at 540-41 (holding that the undefined terms "all risk" and "comprehensive all risk insurance" were ambiguous as to whether those terms included terrorism coverage). In contrast, the Policy here provides a specific definition of the property that may constitute a "loss[:]" "money, securities, or other property." (Ex. A at A-37.) As discussed above, Plaintiffs cannot plausibly allege that the fictitious amounts on their BMIS account statements that had "no relation to reality" fall within any of the three categories of covered property.

[7] *See Ceramicas Industriales, S.A. v. Metropoloitan Life Ins. Co.*, No. 08 Civ. 5114 (DFE), 2009 WL 331262, at *2-3 (S.D.N.Y. Feb. 11, 2009) (holding that a limitations period on suing for breach of corporate purchase agreement was ambiguous as to claims for indemnification for environmental cleanup); *Bank of N.Y. Trust, N.A. v. Franklin Advisors, Inc.*, 522 F. Supp. 2d 632, 635-36 (S.D.N.Y. 2007) (holding, in a complex collateralized loan transaction, that provisions in an indenture governing the collateral manager's entitlement to contingent collateral management fee were ambiguous).

[8] In *Foy v. D.B. Frame Shop, Ltd*., 620 N.Y.S.2d 356 (1st Dept 1994) and *OTC Intn'l, Ltd. v. All Those Underwriters at Lloyd's of London Subscribing to Policy of Ins. Numbered HN99ABXC255,* No. 32209/01, 2004 WL 235191 (N.Y. Sup. Ct. Jan. 29, 2004), cited by Plaintiffs, unlike here, the term "loss" was ambiguous only because the policy omitted another required term. For example, *Foy* involved a notice provision; the term "loss" was ambiguous because the policy did not define when a "loss" occurred and, therefore, when the insured had to give notice of the "loss." *See Foy*, 620 N.Y.S.2d at 356. In *OTC*,

3

Under both New York and California law, courts must enforce the plain meaning of a clear and unambiguous insurance policy. *Waller v. Truck Ins. Exch., Inc.,* 11 Cal. 4th 1, 18–19 (1995). Courts may neither "indulge in a forced construction so as to fasten a liability on the insurance company which it has not assumed," *Jarrett*, 209 Cal. App. 2d at 810, nor adopt "a strained or absurd interpretation in order to create an ambiguity where none exists," *Reserve Ins. Co. v. Pisciotta*, 30 Cal. 3d 800, 807 (1982) (citations omitted). That is precisely what Plaintiffs ask this Court to do here.[9]

### B. Plaintiffs Have Not Suffered A Loss "Directly" From Fraud

Plaintiffs also cannot satisfy the requirement of a loss resulting "directly" from a fraud. As construed by the courts, a "direct" loss is limited to actual pecuniary or out of pocket losses,[10] which, as demonstrated above, Plaintiffs do not have.[11] As the Second Circuit has held, "basing customer recoveries on fictitious amounts . . . would allow customers to recover arbitrary amounts

---

the term "loss" was ambiguous because the policy did not define whether a series of thefts constituted single or multiple events under the policy. *See OTC,* 2004 WL 235191, at *2.

[9] Because there is no ambiguity in the Policy's use of the term "loss" or the definition of what is covered, there is no basis to permit Plaintiffs to "obtain discovery." (Pl. Opp. at 12). Nor is there any room for application of the *contra proferentem* principle, which only applies where an agreement is ambiguous, as the cases Plaintiffs cite, (Pl. Opp. at 7), make clear. *McCarthy v. American Intern. Group, Inc*., 283 F.3d 121, 124 (2d Cir. 2002) (holding only that "equivocal contract provisions" are construed against the drafter); *Lambros v. Metro. Life Ins. Co*., 111 Cal. App. 4th 43, 49 (2d Dist. 2003) ("This policy is not ambiguous, triggering the rule that ambiguities must be construed against the drafter." (citations omitted)).

[10] *Citizens Bank & Trust Co. v. St. Paul Mercury Ins. Co.*, No. CV-305-167, 2007 WL 4973847, at *4, 5 (S.D. Ga. Sept. 14, 2007) (very same policy language as here limited "direct loss" to actual loss of "cash or other such pecuniary loss," and held that "income [the insured] would have earned on the funds had the loans been legitimate" was precisely the type of "indirect" loss that was excluded from coverage); *Fletcher Jones Co. v. United Pac. Ins. Co.*, 181 Cal. App. 2d 202, 206 (2d Dist. 1960) (holding that insurer "could be liable to the [insured] only to the extent that the respondent suffered an actual pecuniary loss as a result of [the fraudulent] acts…."); *Dean v. Fidelity & Deposit Co. of Md*., 253 N.Y.S. 103 (1st Dep't 1931) (holding fidelity insurer was not liable if "no loss had actually been suffered by the firm").

[11] For this same reason, Plaintiffs cannot meet the requirement of the Policy that they show they were induced to "part with something of value" in reliance upon fraud. (Ex. A at A-36.) Plaintiffs' sole response to this point is to incorporate their arguments as to why they suffered a direct loss. (Pl. Opp. at 16.) For the reasons explained above, these arguments have no merit.

4

that necessarily have no relation to reality[.]" *In re New Times Sec. Servs., Inc.*, 371 F.3d 68, 88 (2d Cir. 2004) (citation and internal quotation marks omitted). Plaintiffs understandably devote considerable effort attempting to distinguish *New Times* (Pl. Opp. at 15-16), but the case is fatal to their position as cogently explained last week by Judge Lifland:

> Analogous to the account statements of the Fake Securities Claimants [in *New Times*], the BLMIS account statements "have no relation to reality." *New Times I*, 371 F.3d at 88. Although the securities that Madoff allegedly purchased were identifiable in name, the securities positions reflected on customer account statements were artificially constructed. By backdating trades to produce predetermined, favorable returns, Madoff, like the fraudster in *New Times*, essentially pulled the fictitious amounts from thin air. The resulting securities positions on customers' November 30th Statements were therefore entirely divorced from the uncertainty and risk of actual market trading.

(Net Equity Ruling at 29.) To hold otherwise, "would be simply absurd" and would "credit the fraud and legitimize the phantom world created by Madoff." (*Id*. at 30.)[12]

### C. Plaintiffs' Claim Falls Squarely Within The Policy's Exclusions

Even if Plaintiffs could meet their burden of establishing an insured loss, their claims

---

[12] Plaintiffs' cases (Pl. Opp. at 13-14) do not support a contrary reading of the "direct" loss requirement. Neither the unpublished case of *Visconsi v. Lehman Brothers, Inc*., 244 Fed. Appx. 708 (6th Cir. 2007) nor *Securities & Exchange Commission v. Byers*, 637 F. Supp. 2d 166, 168 (S.D.N.Y. 2009) involve an insurance policy, so they could hardly hold that "an insured is covered for the face value of fictitious loans," as Plaintiffs falsely imply. In *Union Planters Bank, N.A. v. Cont'l Cas. Co*., 478 F.3d 759 (6th Cir. 2007), there was no dispute that the Bank suffered $25 million in actual out of pocket loss as a result of lending money based on nonexistent collateral. *Id*. at 762. The court in *Puget Sound Nat'l Bank v. St. Paul Fire & Marine Ins. Co.*, 645 P.2d 1122, 1129 (Wash. Ct. App. 1982) held that the fidelity bond "covers only actual, as opposed to theoretical losses." In *First Nat'l Bank of Dillonvale v. Progressive Cas. Ins. Co.*, 640 N.E.2d 1147, 1149-50 (Ohio Ct. App. 1993) the appellate court refused to overturn a jury verdict finding that the insured had suffered actual loss because the **collateral** that supported fictitious loans (*i.e*. real property) "had decreased in value" causing actual pecuniary loss and that the bank was unable to earn **interest on its legitimate loans**. Lastly, in *St. Paul Fire & Marine Ins. Co. v. Branch Bank & Trust Co.*, 834 F.2d 416 (4th Cir. 1987), the court rejected the insurers' attempt to use fictitious amounts to net down the loss of principal suffered by the insured. *St. Paul* therefore supports the proposition that when calculating insured loss, fictitious sums should not be considered. Moreover, *Dillonvale* and *Puget Sound* do not even address the issue of loss "resulting directly from fraud." Instead, they all address an exclusion for "potential income" not found in the Policy here. *See Dillonvale*, 640 N.E.2d at 1150; *Puget Sound*, 645 P.2d at 1130.

5

would still fail under the Policy exclusions.  The Policy expressly excludes "any loss that is an *indirect* result of any fraud guard event including but not limited to:  (a) [the policyholder's] inability to realize income that [he or she] would have realized had there been no loss . . . ." (Ex. A at A-40 (emphasis added).)  The Policy also expressly states that it does "not cover any guarantee of the financial performance of any financial instrument or investment vehicle." (*Id*.)

Plaintiffs' ambiguity argument is wrong here as well.  Courts have consistently held that the term "indirect loss" in a policy exclusion is not ambiguous. *Patrick Schaumburg Autos., Inc. v. Hanover Ins. Co*., 452 F. Supp. 2d 857, 871 (N.D. Ill. 2006) (holding that "the term of the Policy titled 'Indirect Loss' that excludes 'loss resulting from [the insured's] inability to realize income that [it] would have realized had there been no loss of, or loss from damage to, Covered Property,' is not ambiguous." (alteration in original)); *Lynch Properties, Inc. v. Potomac Ins. Co. of Ill.*, 962 F. Supp. 956, 964 (N.D. Tex. 1996) (holding indirect loss exclusion unambiguous and applicable where insured had no direct out of pocket loss).

Plaintiffs impermissibly seek coverage for precisely what the Policy excludes: the "indirect" fabricated losses resulting from an "inability to realize income that . . . would have [been] realized had there been no loss . . . ." They are asking Defendants for a "guarantee [in the amount of an implied interest rate] of the financial performance" of their Madoff investment— which is unambiguously excluded.  (*See* Ex. A at A-40.) Because the terms of the Policy are plain and explicit in excluding Plaintiffs' claim for a return on their original investment, this Court should dismiss the Complaint.  *See Jarrett*,  209 Cal. App. 2d at 810;  *see also Fresno Econ. Import Used Cars, Inc. v. U.S. Fid. & Guar. Co.*, 76 Cal. App. 3d 272, 281 (5th Dist. 1977).

      **D.**     **Plaintiffs Cannot State A Claim For Non-Recoverable Tax Payments**

There is no basis for Plaintiffs' claim under the Policy for non-recoverable tax payments. Paragraph 35 of the Complaint, which Plaintiffs allege sets forth the claim (Opp. 16), merely

asserts the contention that "non-recoverable income tax payments based on Madoff statements reflect … losses resulting directly from the Madoff fraud."  As  a matter of pleading, nowhere does the complaint actually allege that the Plaintiffs made such tax payments or that any such payments have been determined to be "non-recoverable."  The claim thus fails the well-established pleading standard of *Twombly*.[13]

Even if Plaintiffs did plead that they paid taxes, the Policy does not insure them.  As discussed in section I.B, *supra*, the Policy is unambiguous and covers only "loss[es] of money, securities, or other property … resulting directly from fraud."  (Ex. A at A-37.)  Here, Plaintiffs' payment of taxes are only the direct result of the tax laws and not a "direct result" of Madoff's fraud, as one of Plaintiffs' own cases makes clear.[14]

In any event, Plaintiffs' concept of "non-recoverable income tax payments," related to the Madoff scheme is implausible, as the IRS has issued guidance that if the Plaintiffs have actually paid the taxes on the full amount of the purported income that Madoff fraudulently reported (and they have not even alleged as much in this action), they can claim the full amount of their losses

---

[13] *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (holding that, to survive a motion to dismiss, a plaintiff must allege facts that are enough to raise her right to relief "above the speculative level"); *Estate of Ungar v. Orascom Telecom Holding S.A.E.*, 578 F. Supp. 2d 536, 549-50 (S.D.N.Y. 2008) ("This Court need not engage in an analysis of hypothetical assertions, raised in one sentence in a footnote of an opposition brief, that echo an empty allegation in the complaint." (citation omitted)).

[14] *Am. Trust & Sav Bank v. U.S. Fid. & Guar. Co.*, 418 N.W.2d 853, 856 (Iowa 1988) ("The payment of income tax on the theoretical gain did not result from the [misappropriation of funds], rather it was a consequence of [the fraudster]'s subsequent cover-up of the prior embezzlements. Thus, this alleged loss was not a loss from the specified acts."); *see also Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421-22 (1996) (holding that plaintiffs' tax liability was not recoverable as "actual pecuniary loss sustained as the direct result of the wrong" because it "was not caused by an act or omission of the defendants, but rather by the [enactment of] the Tax Reform Act of 1986); *Blaney v. Int'l Ass'n of Machinists & Aerospace Workers*, 87 P.3d 757 (Wash. 2004) (en banc) (tax liability too attenuated to be deemed actual damages).  Plaintiffs' reliance on *Alexsey v. Kelley*, 614 N.Y.S.2d 736 (2d Dep't 1994) is unavailing.  There, plaintiffs entered into a contract "to accomplish a tax-free exchange of real property under [the Applicable IRS Rule]." *Id.*  The court held that tax damages were "the natural and foreseeable consequences of" a breach of a contract *intended to minimize tax* liabilities, *id.*, a ruling that is neither novel nor of any import here.

as a "theft loss" that is eligible to be carried back *three years* and forward *twenty years* on their taxes.  *See* Rev. Rule 2009-9, 2009-14 I.R.B. 735.

### E.  Plaintiffs Cannot Escape Their Status As "Net Winners"

Recognizing the insurmountable hurdles they face as "Net Winners" who withdrew more than they invested, Plaintiffs challenge the way in which their "Net Winner" status has been determined, and insist that if the math is done properly, they are in fact "Net Losers."  Plaintiffs are wrong once again.  First, as noted in the moving papers, the so-called "constant dollar" theory of the SEC is relevant only to the bankruptcy proceeding where there is a "limited pool of assets" available to satisfy the claims of investors who deposited money with Madoff at different times.  (Ex. L at 1.)[15]  Here, there is no reason to import the SEC's interpretation of SIPA's statutory "fairness" scheme into the Policy, which does not provide for any adjustment for these alleged fraud losses for inflation.[16]

Second, there is no basis for Plaintiffs' claim that "Defendants agreed to insure Plaintiffs' account balance as it existed on October 1, 2008." (Pl. Opp. at 20).  This is just another way or

---

[15]  Exhibit L is the SEC's brief that was ruled on in the Net Equity Ruling.

[16]  *See Breed v. Ins. Co. of N. Am.,* 46 N.Y.2d 351, 355 (1978)  ("This court may not make or vary the contract of insurance to accomplish its notions of abstract justice or moral obligation, since equitable considerations will not allow an extension of the coverage beyond its fair intent and meaning in order to do raw equity and to obviate objections which might have been foreseen and guarded against" (internal citations, quotation marks, and alterations omitted)).  Plaintiffs' claim that the Policy expressly provides "coverage adjustments for inflation[]'" (Pl. Opp. at 19-20) is either disingenuous or misinformed.  The policy provides, under PART II, PROPERTY coverage (Ex. A at A-10) that inflation will be taken into account only if the "Replacement Cost Coverage" is purchased relating to the **"house** or **other permanent structures**." (Ex. A at A-10-11 (original emphasis).)  It does so by increasing the amount of coverage by "any increase in the United States Consumer Price Index from the **beginning of the Policy Period.**" (*Id.* at A-11 (emphasis added).).  The Horowitzes did not purchase this coverage (which would only have applied to their house and permanent structures)—they only purchased "Replacement Cost Coverage" for "Contents" of the home against "direct physical loss." (*Id.* at A-1, A-10.)  Plaintiffs do not make (and could not sustain) the absurd claim that both i) their purported Madoff account qualified as the "Contents" of their home, and that ii) it had been subject to "direct physical loss or damage."  The Fraud SafeGuard Endorsement that adds the coverage at issue here does so via modification to PART III, LIABILITY (*Id*. at A-37).  "Replacement Cost Coverage" does not apply to any of that section of the Policy.  Try as they might, Plaintiffs cannot apply the coverage limits from one coverage to another, distinct coverage.

arguing that the fictitious account balances should be considered as real, an argument that cannot square with either the Policy or the law.

Plaintiffs' final theory—that "netting" cannot precede the start date of the fraud—is also a non-starter. It has been established that Madoff never made any legitimate securities purchases[17]—certainly none during the time Plaintiffs were invested. Plaintiffs have already admitted as much in this case. (*See* Mov. Br. at 20-21) Plaintiffs' assertion they are "entitled to their own opportunity to litigate these factual issues" (Pl. Opp. at 21) is flatly inconsistent with the Supreme Court's mandate that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (citation omitted).[18]

## II.   PLAINTIFFS' OTHER CLAIMS ARE DUPLICATIVE OF THEIR BREACH OF CONTRACT CLAIM AND THUS FAIL AS A MATTER OF LAW.

Plaintiffs' remaining arguments can be summarily dismissed. First, absent a breach of contract, there can be no claim for breach of the covenant of good faith and fair dealing where, as here, it arises from the same facts as the breach of contract claim.[19] See Compl. ¶¶ 65-66

---

[17] Judge Lifland, overseeing the liquidation of Madoff's brokerage, has already noted that "there is no record of BLMIS having cleared **any** purchase or sale of securities in the Depository Trust & Clearing Corporation…." (Net Equity Ruling at 12 (emphasis added.).)

[18] Plaintiffs' claims fail for the independent reason that they lack an insurable interest required under common law. *Int'l Serv. Ins. Co. v. Gonzales*, 194 Cal. App. 3d 110, 117–118 (3d Dist. 1987); N.Y. Ins. Law § 3401 (2007) (insurable interest requirement). As Plaintiffs' own cases show, an insurable interest requires a showing of a loss of "a direct pecuniary interest in the preservation of the property" and a corresponding "***pecuniary loss*** as an immediate and proximate result of its destruction." *Gonzales*, 194 Cal. App. 3d at 118 (emphasis added). Unlike the situation here, in both of the cases cited by Plaintiffs, *Scarola v. Ins. Co. of N. Am.*, 31 N.Y.2d 411, 413 (1972), and *Cal. Food Serv. Corp., Inc. v. Great Am. Ins.Co.*, 130 Cal. App. 3d 892 (4th Dist. 1982), the claimant had possession of something tangible—i.e., a stolen car. Conversely here, having received all of their investment back from Madoff, Plaintiffs had no "direct pecuniary interest" in the funds of other victims and thus no insurable interest in those funds.

[19] *See Triton Partners LLC v. Prudential Secur. Inc.*, 752 N.Y.S.2d 870, 870 (1st Dep't 2003) ("The breach of the covenant of good faith and fair dealing claim was properly dismissed since it was merely a substitute for a nonviable breach of contract claim." (citation omitted)), *cited in Gross v. Empire Healthchoice Assur., Inc.*, No. 602848-2005, 2007 WL 2066390, at *4 (N.Y. Sup. Ct. 2007)); *see also Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce,* 2010 WL 375162, at *2 (1st Dep't Feb. 4,

(alleging that Defendants' breached the covenant of good faith and fair dealing "by applying after-the-fact and unreasonable valuation of Plaintiffs' … accounts" and not "applying an ordinary understanding of loss.").

With respect to unjust enrichment, Plaintiffs do not dispute that New York courts bar the claim where the relationship is governed by a valid and enforceable contract. Nor do they dispute that California does not recognize a cause of action for unjust enrichment. *Melchior v. New Line Prods.*, 106 Cal. App. 4th 779, 794 (2d Dist. 2003).[20]

Finally, Plaintiffs do not dispute that the declaratory relief claims are duplicative of their contract claim and can be properly dismissed on that basis. Nor do Plaintiffs even attempt to address the authority cited in the moving papers (at 24) warranting dismissal of the declaratory relief claim as to the as-yet unasserted affirmative defenses as premature and for lack of standing.[21] Plaintiffs' attack on Defendant's motives for attempting to resolve this case (based on inadmissible evidence Fed. R. Evid. 408) is no justification for allowing these claims to proceed.

## **CONCLUSION**

Plaintiffs Second Amended Complaint should be dismissed with prejudice.

---

2010) (holding plaintiffs' claim that "defendants breached the implied covenant … was properly dismissed as duplicative of the breach-of-contract claim, as both claims arise from the same facts").

[20] *Ghirardo v. Antonioli*, 14 Cal. 4th 39 (1996), cited by Plaintiffs, neither stands for nor has ever been cited for the proposition that California recognizes unjust enrichment as its own cause of action.

[21] The cases cited by Plaintiffs — *Dream Spa, Inc. v. Fireman's Fund Ins.*, No. 06-CV-13142, 2008 WL 355458 (S.D.N.Y. Feb 6, 2008); *J.J.J. Props, Inc. v. Trav. Indem. Co.*, No. 07 Civ. 0135(WCC), 2008 WL 2735865 (S.D.N.Y. July 7, 2008) — do not even address whether a court should exercise its discretion to allow duplicative claims for declaratory judgment. Nor is Plaintiffs quotation from *Lang v. Hanover* relevant as the Defendants are not disputing whether parties to an insurance contract have standing to sue for declaratory relief. *See* 3 N.Y.3d 350, 353 (2004) (describing the "question presented … [a]s whether … a stranger to the policy … can bring a direct action against the tortfeasor's insurance company…."); *cf. Spitzer v. Schussel*, 48 A.D.3d 233, 234 (1st Dep't. 2008) ("[T]he declaratory judgment cause of action is duplicative of the cause of action for an accounting in the original complaint, and is thus unnecessary and inappropriate[.]" (citation omitted)).

DATED: New York, New York
March 8, 2010

      QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By:   /s/ Michael B. Carlinsky
   Michael B. Carlinsky (Bar No. MC-6594)
   Jane M. Byrne (Bar No. JB-6748)

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601
(212) 849-7000
michaelcarlinsky@quinnemanuel.com
janebyrne@quinnemanuel.com

Attorneys for Defendants